WILLIAM R. SMITH, assignee, *vs.* AMERICAN LINEN
COMPANY.

Bristol.    October 25, 1898. — November 23, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Insolvency — Preference — Statute.*

Accepting a preference in payment for goods sold to an insolvent after his credi-
tors have given him an extension of time is not a bar, under Pub. Sts. c. 157,
§ 33, to proof of a claim upon a note given for an old debt when the extension
was granted.

BILL IN EQUITY, filed March 7, 1898, to revise the refusal of
the Court of Insolvency to expunge the proof of the defendant's
claim. The case was heard by *Barker*, J., on the bill, answer,
and certain agreed facts, which recited, in substance, that Mau-
rice T. Barlow, being insolvent, was given by his creditors on
November 20, 1893, an extension of time for one year that he
might continue in business, it being hoped that by so doing he
would be able to pay them in full, and it was stated at the
meeting that during this time Barlow would pay cash for what
he bought; that the defendant, whose claim at that time was
$4,578.51, and the other creditors accepted notes for the amounts
of their claims, which notes were from time to time renewed;
that the defendant received on November 16, 1894, notice from
Barlow, dated November 14, 1894, which notice was also sent to
the other creditors, that he was hopelessly insolvent; that on
December 18, 1894, he filed his petition in insolvency, and the
plaintiff was appointed assignee; that on January 4, 1895, the
defendant proved in insolvency its extended claim, making no
reference to the cash claim hereinafter referred to; that from
November 20, 1893, to November 19, 1894, the defendant sold
to Barlow many bills of goods, receiving payment from two to
ten days of the time of delivery, these transactions being kept
upon the books of the defendant separate from the claim proved
by the defendant against Barlow in insolvency; that the only
knowledge of the defendant as to the financial condition of

Barlow during the year was that conveyed by the extension of November 20, 1893, and in the notice received on November 16, 1894; that Barlow was still carrying on his business as a dealer in waste on November 30, 1894; that the notes given for the claim proved in insolvency fell due on November 19, 1894; that the defendant and Barlow understood that the transactions in question were for cash, that is, were to be paid for by Barlow within ten days from delivery, and that the sales to Barlow and the payments by him to the defendant relied on as fraudulent preferences were as follows.

| 1894. | Sales. | 1894. | Payments. |
|---|---|---|---|
| Nov. 13 | Waste $245.47 | Nov. 23 | Cash $245.47 |
| "   23 | 286.41 | "   23 | 280.00 |
| "   27 | 218.13 | "   26 | 6.41 |
|  |  | "   30 | 218.13 |
|  | $750.01 |  | $750.01 |

A decree was entered that the bill be dismissed; and the plaintiff appealed to the full court.

*L. LeB. Holmes*, for the plaintiff.

*A. J. Jennings & J. M. Morton, Jr.*, for the defendant.

HOLMES, J.    This is a bill in equity, brought under Pub. Sts. c. 157, § 15, by the assignee in insolvency of one Barlow, to revise the refusal of the Court of Insolvency to expunge the proof of the defendant's claim, the ground of the bill being that the defendant has accepted a preference. Pub. Sts. c. 157, § 33. The material facts are these. In November, 1893, Barlow was insolvent, and his creditors gave him an extension of time that he might continue in business, it being hoped that by doing so he would be able to pay them in full. The creditors accepted notes for the amount of their claims. In November of the following year, the defendant sold Barlow waste from its mills by what are called cash transactions, that is, upon the understanding that it was to be paid for the goods in ten days, and it was paid for the same at the end of ten days in November, while Barlow still was going on. The last of these transactions was after notice that Barlow would not be able to pay his debts at the end of the extension. In December, 1894, Barlow went into insolvency. The payments just mentioned constitute the alleged preference.

The claim which the defendant was allowed to prove was for the old extended debt alone.

It is unnecessary to consider whether as against later creditors, if not as against those who agreed to give time, the credit given upon what merchants call a cash sale stands differently from any longer or other credit in respect of the right of the creditor to accept payment without accepting a preference. *Upton* v. *Sturbridge Cotton Mills*, 111 Mass. 446. For we are of opinion that the debt on account of which the preference, if any, was given, was distinct from the claim upon the note which was proved. The prohibition of § 33 is only that the person who has accepted the preference, etc., " shall not prove the debt or claim on account of which the preference was made or given." This language plainly implies that there may be another debt or claim, as of course there may be, and that the prohibition does not extend to such other debt or claim. We see nothing in the creditor's oath to change the construction, and the meaning of the words cannot be shaken by putting cases where the difference between one claim and two becomes nice. Any distinction, no matter how sensible and how plain, leads at last to a line which is worked out by the contact of decisions clustering around the opposite poles, and which may seem arbitrary if we attend to it alone and not to the nature of the groups which it divides. As no preference was given on account of the note, the section does not apply. Similar words in the last bankrupt act before the present were construed as we construe the Massachusetts statute. *In re Lee,* 14 Bankr. Reg. 89, 92. *In re Holland,* 8 Bankr. Reg. 190. *In re Richter's estate,* 4 Bankr. Reg. 221, 232.

*Bill dismissed.*