LOWELL BAR ASSOCIATION & another *vs.* BIRDIE T. LOEB & another.

Middlesex.    November 8, 1943. — December 8, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Attorney at Law. Equity Pleading and Practice,* Injunction, Decree, Appeal.

Upon an appeal from a final decree in a proceeding under § 46B, inserted
    by St. 1935, c. 346, § 2, in G. L. (Ter. Ed.) c. 221, where the record
    included a report of all the evidence as well as a voluntary report by
    the trial judge of "all the material facts," this court was not limited
    to the facts recited in the findings of the trial judge, but could find
    others from the evidence and, if findings made by the trial judge were
    deemed to be plainly wrong, could make findings contrary thereto.
Statement by LUMMUS, J., with citation of authorities, of occupations
    and professions, which are universally recognized as distinct from the
    practice of law and in the usual practice of which the giving of advice
    or the drawing of documents or performance of other services is not
    deemed practice of law prohibited to persons not members of the bar
    although done for compensation and involving some element of law
    or legal effect or knowledge of law.
Merely advertising through newspapers and by placards a service of
    making out simple income tax returns for persons whose income con-
    sisted wholly, or almost wholly, of salary or wages, and the rendering
    of such service for compensation, was not the practice of law by per-
    sons not members of the bar in violation of § 46A, inserted by St. 1935,
    c. 346, § 2, in G. L. (Ter. Ed.) c. 221.
For persons not members of the bar, associated in the advertising and
    conducting of a service of preparing for a consideration simple income
    tax returns of salary and wage earners, also to advertise the furnish-
    ing for such consideration of "counsel in handling income tax matters
    should any develop after the official audit by the U. S. Tax Depart-
    ment during the year," naming an attorney at law as "legal counsel"
    and stating that "we stay with your taxes" and "take care of all cor-
    respondence and all interviews with the tax department," was the
    advertising of an undertaking to sell the legal services of a lawyer who
    was to act for the association, and was a violation of § 46A, inserted
    by St. 1935, c. 346, § 2, in G. L. (Ter. Ed.) c. 221.
A preliminary injunction expired upon the later entry of a final decree
    after a hearing on the merits, and the propriety of the preliminary
    injunction was not considered on appeals from both decrees.

PETITION, filed in the Superior Court on February 18 1943.

The case was heard by *Morton, J.*

*H. W. Cole,* (*C. W. O'Brien* with him,) for the respondents.

*R. B. Walsh,* (*A. Z. LeMoine,* Assistant Attorney General, with him,) for the petitioners.

*R. G. Dodge* & *E. H. Sullivan; R. B. Heavens;* and *R. S. Woodbury,* by leave of court, submitted briefs as amici curiae.

LUMMUS, J. This is a petition in equity, under G. L. (Ter. Ed.) c. 221, § 46B, inserted by St. 1935, c. 346, § 2, brought by an incorporated association of members of the bar, to restrain the respondents, who are not members of the bar, from holding themselves out as authorized, entitled, competent, qualified and able to practise law, from engaging in the practice of law, and from giving legal advice in respect to liability to pay income taxes and the preparation and execution of income tax returns. See also *Steinberg* v. *McKay,* 295 Mass. 139, 142; *McMurdo* v. *Getter,* 298 Mass. 363, 364. The petition was dismissed as to the respondent Koch, who was not served with process. The Attorney General was permitted to intervene as an additional petitioner, under the section of the statute cited. From the decree allowing him to intervene, the remaining respondents Birdie T. Loeb and J. H. Friedman appealed. There is nothing in that appeal, and it is not argued. By interlocutory decree entered on March 4, 1943, those respondents were enjoined until the further order of the court "from in any form or manner advertising in the newspapers of this Commonwealth the making of tax returns, from maintaining signs or placards in the windows of the premises at 260 Merrimack Street, Lowell, Massachusetts, and from in any manner practicing law in this Commonwealth." By the final decree, entered on March 15, 1943, those respondents were "permanently enjoined and restrained from advertising a tax service in any form whatsoever, whether in newspapers, placards or signs displayed in their various offices, and from engaging in the making out of income tax returns as a regular occupation and other than the occa-

sional drafting thereof and from engaging in the practice of the law in any of its aspects," and were ordered to pay costs. From each decree those respondents appealed. The case is here on a voluntary report of "all the material facts," and a report of all the evidence under G. L. (Ter. Ed.) c. 214, § 24, and Rule 76 of the Superior Court (1932).

In our consideration of the facts, we are not limited to those recited in the findings of the judge, even though he undertook to find "all the material facts." All the evidence is before us, and all questions of law, fact and discretion are open for our decision. From the evidence we can find facts not expressly found by the judge. If convinced that he was plainly wrong, we can find facts contrary to his findings. *Trade Mutual Liability Ins. Co.* v. *Peters*, 291 Mass. 79, 83, 84. *Culhane* v. *Foley*, 305 Mass. 542, 543. *Marshall* v. *Landau*, 308 Mass. 239, 241, 242. *Bernhardt* v. *Atlantic Finance Corp.* 311 Mass. 183. *McLaughlin* v. *Old Colony Trust Co.* 313 Mass. 329, 330.

The facts may be summarized as follows: One Louis G. Loeb, an attorney at law practising in Boston, the husband of the respondent Birdie T. Loeb, had an interest in a business of making out income tax returns for wage earners which was carried on in Quincy in 1941, and was then discontinued. In the summer of 1942 he planned to establish a similar business in a number of manufacturing cities. Recent statutes had required income tax returns from many wage earners previously exempt, and the trend was toward a further extension of tax liability. U. S. C. Title 26, § 51, originally enacted as Act of May 28, 1938, c. 289, § 51 (52 U. S. Sts. at Large, 476), and later amended by Act of June 25, 1940, c. 419, Title I, § 7 (a) (54 U. S. Sts. at Large, 519), Act of September 20, 1941, c. 412, Title I, § 112 (a) (55 U. S. Sts. at Large, 696), and Act of October 21, 1942, c. 619, Title I, §§ 131 (c) (1), 136 (a) (56 U. S. Sts. at Large, 828, 836). For the Victory Tax, see Act of October 21, 1942, c. 619, Title I, § 172 (56 U. S. Sts. at Large, 884).

To carry out his plan, he organized the unincorporated American Tax Service, with headquarters in Boston which soon after establishment were moved to his law office, and

with branch offices in Lowell, Lawrence and other manu-
facturing cities.    He is the real owner of the business,
although he devotes little time to it.    The respondent
Birdie T. Loeb devotes all her time to the business, and
ostensibly is the proprietor.    The respondent Friedman is
general manager, and has his office at the Boston head-
quarters.    The respondent Koch was manager of the Lowell
branch until succeeded by one Shea.    The business has
about one hundred employees during the season for income
tax returns.    None of them is a member of the bar.    None
of them appears to be an accountant, with the exception of
the respondent Friedman.

The American Tax Service does not attempt to make
out income tax returns for corporations, partnerships, es-
tates, fiduciaries or business men conducting a business.
Its patrons are exclusively persons whose income consists
wholly, or almost wholly, of salary or wages.    It advertises
extensively in newspapers and by signs in its windows.
There is little modesty or restraint about its advertising,
which is designed to arrest attention and to bring in a large
volume of business.    Its uniform prices are $2 for a State
or Federal return, and $3.75 for both returns.    Its "maxi-
mum charge for all returns to any one person" is advertised
to be the latter sum.

The legal principles underlying this case are now well
established.    The judicial department of government, and
no other, has power to license persons to practise law.
Statutes may aid by providing machinery and criminal
penalties, but may not extend the privilege of practising
law to persons not admitted to practice by the judicial
department.    *Opinion of the Justices*, 289 Mass. 607.
*Keenan, petitioner*, 310 Mass. 166.    *Matter of Keenan*, 313
Mass. 186, 196, 204, 205.    Note, 144 Am. L. R. 150.    As
constituted at present, the Massachusetts bar is a unit.
Each member may practise in any State court and in any
branch of legal work, without regard to his special qualifi-
cations in one branch or his comparative lack of them in
another.    In England, the legal profession is divided, and
lawyers may practise only in the branch of work for which

they have been admitted. Formerly a similar division existed in this Commonwealth. Washburn, Judicial History of Massachusetts, 189, 200, 201. S. J. C. Rules (1806) 2 Mass. 72, 105. S. J. C. Rules (1810) 6 Mass. 382. St. 1782, c. 9, § 4. Rev. Sts. (1836) c. 88, § 23. Pub. Sts. (1882) c. 159, § 37. G. L. (Ter. Ed.) c. 221, § 37. The justification for excluding from the practice of law persons not admitted to the bar is to be found, not in the protection of the bar from competition, but in the protection of the public from being advised and represented in legal matters by incompetent and unreliable persons, over whom the judicial department could exercise little control. *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369, 372. See also *McMurdo* v. *Getter*, 298 Mass. 363, 366.

A member of the bar is held to a high standard of honor and of ethical conduct. He may not advertise for business or solicit employment. *Matter of Cohen*, 261 Mass. 484. *Matter of Maclub of America, Inc.* 295 Mass. 45, 48. *Matter of Thibodeau*, 295 Mass. 374, 376. *Commonwealth* v. *Brown*, 302 Mass. 523, appeal dismissed *Brown* v. *Massachusetts*, 308 U. S. 504. But "a member of the bar is free to engage in commercial pursuits of an honorable character and to advertise and to extend his purely mercantile· business honestly and fairly by ordinary commercial methods." *Matter of Thibodeau*, 295 Mass. 374, 376. See also *Commonwealth* v. *Ferris*, 305 Mass. 233, 234, 235.

The judicial department is necessarily the sole arbiter of what constitutes the practice of law. *Opinion of the Justices*, 289 Mass. 607, 614. *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369, 372. *State* v. *Kirk*, 133 Neb. 625. *People* v. *Goodman*, 366 Ill. 346, 349. *Clark* v. *Austin*, 340 Mo. 467, 474, 475. *Judd* v. *City Trust & Savings Bank*, 133 Ohio St. 81, 85. It is not easy to define the practice of law. Since it undertakes to determine all controversies as to rights that may arise among men, the law pervades all human affairs. This has become increasingly evident in recent years. Statutes familiar to everyone have made almost every citizen feel the heavy hand of the law, helping him or hampering him, often adding to his financial burdens,

and markedly increasing his dependence upon experts, especially in law and in accounting.

The proposition cannot be maintained, that whenever, for compensation, one person gives to another advice that involves some element of law, or performs for another some service that requires some knowledge of law, or drafts for another some document that has legal effect, he is practising law. All these things are done in the usual course of the work of occupations that are universally recognized as distinct from the practice of law. There is authority for the proposition that the drafting of documents, when merely incidental to the work of a distinct occupation, is not the practice of law, although the documents have legal consequences. We cite the cases for that principle, and not to approve the application of that principle to the particular facts of the cases cited. *Merrick* v. *American Security & Trust Co.* 107 Fed. (2d) 271. *People* v. *Title Guarantee & Trust Co.* 227 N. Y. 366. *People* v. *Title Guarantee & Trust Co.* 191 App. Div. 165, affirmed 230 N. Y. 578. *Gustafson* v. *V. C. Taylor & Sons, Inc.* 138 Ohio St. 392. *In re Unauthorized Practice of Law,* 58 Ohio App. 79. *State* v. *Rice,* 236 Wis. 38, 56. *Childs* v. *Smeltzer,* 315 Penn. St. 9. *State* v. *Childe,* 139 Neb. 91. *Grand Rapids Bar Association* v. *Denkema,* 290 Mich. 56. *Cowern* v. *Nelson,* 207 Minn. 642. *Cain* v. *Merchants National Bank & Trust Co.* 66 N. D. 746. 16 Am. Bar Assn. Journal (1930) 558. Compare *People* v. *Lawyers Title Corp.* 282 N. Y. 513.

For example, an architect cannot advise a landowner properly, or plan for him intelligently, without an adequate knowledge of the building laws and regulations. In practice, an architect prepares the building contract, and drafts the specifications that accompany it and determine to a great extent the rights and liabilities of the landowner. An insurance agent or broker, in order to be of service, must know the legal effect of different forms of policies and of various provisions in them. Often he is the agent of the insured (*Commonwealth Mutual Fire Ins. Co.* v. *William Knabe & Co. Manuf. Co.* 171 Mass. 265; *Ritson* v. *Atlas Assurance Co. Ltd.* 279 Mass. 385, 392; *Fireman's Fund*

*Ins. Co.* v. *Shapiro,* 286 Mass. 577, 581), and as such drafts riders, to be attached to a policy, which have important legal effect. An appraiser or valuer of property, real or personal, must be acquainted with the principles of value that find acceptance in the courts. Bonbright, Valuation of Property (1937). An auctioneer or broker often drafts sale notes, receipts and memoranda for his employer which may affect his legal rights. *Remick* v. *Sandford,* 118 Mass. 102. *White* v. *Dahlquist Manuf. Co.* 179 Mass. 427. *Kelly* v. *Holbrook,* 191 Mass. 565. *Cohen* v. *Jackson,* 210 Mass. 328. *Hobart* v. *Lubarsky,* 215 Mass. 528. *Record* v. *Littlefield,* 218 Mass. 483, 485. *Avondale Mills* v. *Benchley Brothers, Inc.* 244 Mass. 153, 159. *Evans, Coleman & Evans, Ltd.* v. *Pistorino,* 245 Mass. 94. Reports of Am. Bar Assn. Vol. 67 (1942) 218, 224. A so called customhouse broker (U. S. C. Title 19, § 1641) commonly prepares for the importer documents that have important legal effect, and to do so requires considerable knowledge of the law of customs duties. *People* v. *State Tax Commission,* 282 N. Y. 407. *State* v. *William J. Oberle, Inc.* 140 So. 239 (La. App.).

The work of an accountant necessarily brings him into touch with rules of law which he must understand if his computations and conclusions are to stand the test of possible litigation. He must know the nature and general legal effect of negotiable instruments, patent rights, corporate stock and bonds of different kinds, insurance policies, and other contracts. He must appreciate the distinction between buying goods, and taking them as bailee, agent, broker or factor. He could hardly prepare a correct account for a partnership without a working knowledge of the main principles of the law of partnership.[1] In preparing an account for a trust estate, he must understand the difference between principal and income, and the rules of

---

[1] *Somerset Potters Works* v. *Minot,* 10 Cush. 592. *Whitcomb* v. *Converse,* 119 Mass. 38. *Clarke* v. *Stanwood,* 166 Mass. 379. *Very* v. *Clarke,* 177 Mass. 52. *Moore* v. *Rawson,* 185 Mass. 264; *S. C.* 199 Mass. 493. *Rosenberg* v. *Schraer,* 200 Mass. 218. *Hutchins* v. *Page,* 204 Mass. 284. *Magullion* v. *Magee,* 241 Mass. 360. *Rutan* v. *Coolidge,* 241 Mass. 584. *Brigham* v. *Bicknell,* 247 Mass. 412. *Shelley* v. *Smith,* 271 Mass. 106. *Shapira* v. *Budish,* 275 Mass. 120. *Shulkin* v. *Shulkin,* 301 Mass. 184. *Silversmith* v. *Sydeman,* 305 Mass. 65. *Boyer* v. *Bowles,* 310 Mass. 134.

law governing the allocation of receipts and expenses to the one or the other.[1]  Income taxes have produced a flood of judicial decisions and departmental rulings with which he must have adequate acquaintance, even though he merely works with figures and does not draft tax returns.  A sharp line cannot be drawn between the field of the lawyer and that of the accountant.  Some matters lie in a penumbra.  But any service that lies wholly within the practice of law cannot lawfully be performed by an accountant or any other person not a member of the bar.

Plainly the commencement and prosecution for another of legal proceedings in court, and the advocacy for another of a cause before a court, in cases relating to taxes as in other cases, are reserved exclusively for members of the bar.[2]  Doubtless the examination of statutes, judicial decisions, and departmental rulings, for the purpose of advising upon a question of law relative to taxation, and the rendering to a client of an opinion thereon, are likewise part of the practice of law in which only members of the bar may engage.  *Rosenthal* v. *Shepard Broadcasting Service, Inc.* 299 Mass. 286, 289, 290.  *In re Petition of the Grievance Committee of the Bar of New Haven County* v. *Payne*, 128 Conn. 325.  *Crawford* v. *McConnell*, 173 Okla. 520.  *Mandelbaum* v. *Gilbert & Barker Manuf. Co.* 160 Misc. (N. Y.) 656.  *Application of New York County Lawyers' Association*, 43 N. Y. Sup. (2d) 479.  Compare *Elfenbein* v. *Luckenbach Terminals, Inc.* 111 N. J. L. 67.

When we pass beyond those propositions we enter debatable ground.  The present case does not require us to delimit either the practice of law in tax matters or the right

---

[1] *New England Trust Co.* v. *Eaton*, 140 Mass. 532.  *Gray* v. *Hemenway*, 212 Mass. 239.  *Talbot* v. *Milliken*, 221 Mass. 367.  *Cogswell* v. *Weston*, 228 Mass. 219.  *Creed* v. *McAleer*, 275 Mass. 353.  *Chase* v. *Union National Bank of Lowell*, 275 Mass. 503.  *Mahoney* v. *Kearins*, 282 Mass. 130, 138.  *Old Colony Trust Co.* v. *Comstock*, 290 Mass. 377.  *Harvard Trust Co.* v. *Duke*, 304 Mass. 414.  *Springfield Safe Deposit & Trust Co.* v. *Wade*, 305 Mass. 36.  *McKechnie* v. *Springfield*, 311 Mass. 406.  *Union Trust Co. of Springfield* v. *Dexter*, 311 Mass. 737.

[2] An exception may exist in "small claims" procedure in District Courts.  G. L. (Ter. Ed.) c. 218, § 21.  Rule 12 for Small Claims Procedure, District Courts (1940) and Municipal Court of the City of Boston (1940).  *McLaughlin* v. *Municipal Court of the Roxbury District of Boston*, 308 Mass. 397.  *American Automobile Association, Inc.* v. *Merrick*, 117 Fed. (2d) 23, 25.  See also *Crystal Spring Finishing Co.* v. *Freetown*, 314 Mass. 315, 317.

of persons not admitted to the bar to engage for compensation in the business of assisting others in such matters. It would be unwise, and perhaps unfair to future litigants, to enunciate at this time broad principles not necessary to the decision of the case before us.

Specifically, we do not deal at this time with the validity of Rule 1 of the Massachusetts Appellate Tax Board which purports to give to a certified public accountant the right to practise before that tribunal, or with the question whether a person not a member of the bar may be allowed to practise before any administrative tribunal in this Commonwealth. If such practice by one not a member of the bar is the practice of law, no rule of such a tribunal can legalize it. The statutes of this Commonwealth give to a certified public accountant no right not possessed by other accountants and other persons generally, except the right to style himself "certified public accountant." G. L. (Ter. Ed.) c. 112, §§ 87D, 87E. Whether practice before an administrative tribunal in tax matters is the practice of law has been the subject of decisions elsewhere that appear to be in some conflict.[1]

Neither do we consider at this time whether the permission granted to certified public accountants and other persons not members of the bar to practise in tax matters by the rules[2] of the United States Treasury Department and

---

[1] That it is, see the following: *Bump* v. *District Court of Polk County,* 232 Iowa, 623; *Chicago Bar Association* v. *United Taxpayers of America,* 312 Ill. App. 243. *Matter of New York County Lawyers Association* v. *Dawkins,* 262 App. Div. (N. Y.) 56; Note, 111 Am. L. R. 32, 36. That practice before administrative tribunals in other than tax matters is the practice of law, see the following: *People* v. *Goodman,* 366 Ill. 346; 111 Am. L. R. 1 and note; certiorari denied, *Goodman* v. *Illinois,* 302 U. S. 728; *Clark* v. *Austin,* 340 Mo. 467; *Shortz* v. *Farrell,* 327 Penn. St. 81; *Blair* v. *Motor Carriers Service Bureau, Inc.* 40 Pa. D. & C. 413, 423; *State* v. *Wells,* 191 S. C. 468; *State* v. *Childe,* 139 Neb. 91. Reports of Am. Bar Assn. Vol. 66 (1941) 272, 436; Vol. 65 (1940) 209.

Tending to the contrary are the following: *Merrick* v. *American Security & Trust Co.* 107 Fed. (2d) 271, 278; *Groninger* v. *Fletcher Trust Co.* 220 Ind. 202; *Tanenbaum* v. *Higgins,* 190 App. Div. (N. Y.) 861; Reports of N. Y. State Bar Assn. Vol. 65 (1942) 141, 163.

See also *Liberty Mutual Ins. Co.* v. *Jones,* 344 Mo. 932.

[2] Treasury Circular 230, as revised to October 23, 1941, allowing practice before the Treasury Department by enrolled attorneys and certified public accountants. Rule 2 of the former United States Board of Tax Appeals. Rule 2 of the Tax Court of the United States, which provides for the admission to practice after examination of citizens, without restriction to members

of the administrative tribunal (*Helvering* v. *Rankin*, 295
U. S. 123, 131; *Higgins* v. *Commissioner of Internal Revenue*,
312 U. S. 212) now called the Tax Court of the United States,
can have the effect of granting by implication to holders of
"Treasury enrollment cards" a right to perform in this Com-
monwealth services in connection with Federal taxes which
in their nature are comprised in the practice of law.   It may
deserve consideration whether the rules of a Federal adminis-
trative tribunal can legalize acts done in the States in matters
not actually before the tribunal, though of a class that might
eventually come before it.   *Matter of Lyon*, 301 Mass. 30,
34–36.   *De Pass* v. *B. Harris Wool Co.* 346 Mo. 1038.

Moreover, we do not decide at this time whether consider-
ing, or advising upon, questions of law only so far as they
are incidental to the preparation for another of an income
tax return may constitute the practice of law where the re-
turn is more complicated than were those in the case before
us, and the questions of law as well as of accounting are
correspondingly more difficult and important.[1]

Confining our decision to the case at bar, we find the re-
spondents engaged in the business of making out income tax
returns of the least difficult kind.   The blank forms fur-
nished by the tax officials for that class of returns are made
simple, and are accompanied by plain printed instructions.
The forms may appear formidable to persons unused to
mental concentration and to clerical exactness, but they can
readily be filled out by any intelligent taxpayer whose income
is derived wholly or almost wholly from salary or wages and
who has the patience to study the instructions.

---

of the bar or certified public accountants.   U. S. C. Title 26, § 1100, as amended
by Act of October 21, 1942, c. 619, Title V, § 504 (a) (56 U. S. Sts. at Large,
957).   Such rules were recognized as valid in *Goldsmith* v. *United States Board
of Tax Appeals*, 270 U. S. 117, and *Crane-Johnson Co.* v. *Commissioner of Inter-
nal Revenue*, 105 Fed. (2d) 740, 744.   See also Journal of Accountancy, Vol.
64 (1937) 127, 130; Vol. 72 (1941) 45; Vol. 74 (1942) 470.

[1] On this question see the following: *Humphreys* v. *Commissioner of In-
ternal Revenue*, 88 Fed. (2d) 430; *Merrick* v. *American Security & Trust Co.*
107 Fed. (2d) 271, 278; *Girard Investment Co.* v. *Commissioner of Internal
Revenue*, 122 Fed. (2d) 843, 848; *Groninger* v. *Fletcher Trust Co.* 220 Ind. 202;
*Bump* v. *District Court of Polk County*, 232 Iowa, 623; *Blair* v. *Motor Carriers
Service Bureau, Inc.* 40 Pa. D. & C. 413, 420, 430; Am. Bar Assn. Reports,
Vol. 63 (1938) 325; Vol. 64 (1939) 269; Vol. 68 (1943) —— [Advance Pro-
gram, 173]; N. J. State Bar Assn. Year Book (1941) 143; Journal of Ac-
countancy, Vol. 66 (1938) 154; N. Y. Certified Public Accountant, Vol. 8
(1938) 12; Conn. C. P. A. for Dec. 1940.

We are aware that there has been said to be no difference in principle between the drafting of simple instruments and the drafting of complex ones. *People* v. *Lawyers Title Corp.* 282 N. Y. 513, 521. *Paul* v. *Stanley,* 168 Wash. 371, 377, 378. But though the difference is one of degree, it may nevertheless be real. *Irwin* v. *Gavit,* 268 U. S. 161, 168. *Rideout* v. *Knox,* 148 Mass. 368, 372. *Smith* v. *American Linen Co.* 172 Mass. 227, 229. There are instruments that no one but a well trained lawyer should ever undertake to draw. But there are others, common in the commercial world, and fraught with substantial legal consequences, that lawyers seldom are employed to draw, and that in the course of recognized occupations other than the practice of law are often drawn by laymen for other laymen, as has already been shown. The actual practices of the community have an important bearing on the scope of the practice of law. *People* v. *Alfani,* 227 N. Y. 334, 339. *People* v. *Title Guarantee & Trust Co.* 227 N. Y. 366, 377, 379.

We think that the preparation of the income tax returns in question, though it had to be done with some consideration of the law, did not lie wholly within the field of the practice of law. See *Shortz* v. *Farrell,* 327 Penn. St. 81, 92; *Blair* v. *Motor Carriers Service Bureau, Inc.* 40 Pa. D. & C. 413, 422, 429, 430; *Gustafson* v. *V. C. Taylor & Sons, Inc.* 138 Ohio St. 392; *Crawford* v. *McConnell,* 173 Okla. 520, 523; *In re Eastern Idaho Loan & Trust Co.* 49 Idaho, 280; 73 Am. L. R. 1323; *In re Matthews,* 58 Idaho, 772; 111 Am. L. R. 13, and note at page 29; Note, 125 Am. L. R. 1174, et seq. The final decree should not have enjoined the respondents from preparing such returns.

But though the permanent injunction which was granted was too broad, a final decree for the petitioners was required by facts that remain to be stated. For the small fee charged, which was advertised as "the most any one taxpayer pays us," patrons were promised "counsel in handling income tax matters should any develop after the official audit by the U. S. Tax Department during the year." The "legal counsel" was advertised to be Louis G. Loeb. Patrons were promised that "we stay with your taxes." Signs in the

windows stated, "We take care of all correspondence and all interviews with the tax department. ATS stays with your taxes. Its services are available to you throughout the year."

We think that what was promised patrons was not the recommendation or the payment of a lawyer who would serve them in the direct and usual relation of attorney and client, as in *Matter of Thibodeau*, 295 Mass. 374, 378. What the respondents advertised and undertook to do was to sell the legal services of a lawyer who was to act for the American Tax Service. That was unlawful under *Matter of Maclub of America, Inc.* 295 Mass. 45, and *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369, whether done by an attorney or by a layman. Although Louis G. Loeb was the undisclosed principal, the respondent Birdie T. Loeb as the ostensible proprietor bound herself by contract to sell legal services. *Groce v. First National Stores Inc.* 268 Mass. 210, 213, 214. *Norfolk County Trust Co. v. Green*, 304 Mass. 406, 409. The respondent Friedman assisted her in that violation of law.

The respondents testified that after an interlocutory hearing on February 24, 1943, they decided not to perform their contracts to furnish legal services. But we do not find that there was a genuine and permanent change of policy. Their decision was never made known to patrons. Their testimony does not require the denial of injunctive relief. Compare *Matter of Thibodeau*, 295 Mass. 374, 376; *Rosenthal v. Shepard Broadcasting Service, Inc.* 299 Mass. 286, 290, 291.

A question has arisen as to the proper disposition of the appeal from the interlocutory decree granting a preliminary injunction. In the equity practice of this Commonwealth, interlocutory and final decrees, but no other judicial acts, are appealable. *Fusaro v. Murray*, 300 Mass. 229. *Rowe v. Bragg*, 300 Mass. 298. *Carilli v. Hersey*, 303 Mass. 82, 87. *Broomfield v. Checkoway*, 310 Mass. 68, 70. *Fields v. Othon*, 313 Mass. 115, 118. An appeal from an interlocutory decree does not suspend the execution of the decree. G. L. (Ter. Ed.) c. 214, § 26. Such an appeal lies dormant until brought to this court with an appeal from the final decree, and cannot

be brought here by itself. *Fusaro* v. *Murray*, 300 Mass. 229. *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113, 120. *School Committee of Winchendon* v. *Selectmen of Winchendon,* 300 Mass. 266. *New England Co.* v. *Pritchard,* 300 Mass. 362, 364. *Seder* v. *Kozlowski,* 311 Mass. 30, 35, 36. *Orth* v. *Paramount Pictures, Inc.* 311 Mass. 580. *Pereira's Case,* 313 Mass. 774.

When an interlocutory decree grants a preliminary injunction, to continue in force "until the further order of the court," an order for a final decree denying relief is a "further order" which either ends the preliminary injunction by its own limitation, or impliedly dissolves it. *Stathopoulos* v. *Reeksting,* 252 Mass. 542. *Crossman* v. *Griggs,* 186 Mass. 275, 280. See also G. L. (Ter. Ed.) c. 214, § 9; *Schainmann* v. *Brainard,* 8 Fed. (2d) 11; *Davis* v. *Hayden,* 238 Fed. 734, 736, 737. An appeal from a decree (or the informal equivalent of a decree, *Wallin* v. *Smolensky,* 303 Mass. 39, 42; *Boston* v. *Santosuosso,* 308 Mass. 202, 212) dissolving a preliminary injunction, does not suspend the dissolution or restore the injunction. *Knox County* v. *Harshman,* 132 U. S. 14. *Merrimack River Savings Bank* v. *Clay Center,* 219 U. S. 527. *Cumberland Telephone & Telegraph Co.* v. *Louisiana Public Service Commission,* 260 U. S. 212, 215. *Virginian Railway* v. *United States,* 272 U. S. 658, 668, 669. See also *Reed* v. *Pheeney,* 253 Mass. 90, 92.

In the present case the final decree was for the petitioners, and granted a permanent injunction much like the preliminary injunction. A final decree is a definitive determination of the rights and liabilities of the parties with respect to the controversy presented by the pleadings. It exhausts the power of the court over the merits of that controversy, with some exceptions that need not be discussed. *Kingsley* v. *Fall River,* 280 Mass. 395. *Beacon Oil Co.* v. *Maniatis,* 284 Mass. 574. *Prenguber* v. *Agostini,* 289 Mass. 222. *Frechette* v. *Thibodeau,* 294 Mass. 51. *Hyde Park Savings Bank* v. *Davankoskas,* 298 Mass. 421. *Borst* v. *Young,* 302 Mass. 124. *Nelson* v. *Bailey,* 303 Mass. 522. *Commissioner of Insurance* v. *Broad Street Mutual Casualty Ins. Co.* 306 Mass. 362. *Boston* v. *Santosuosso,* 308 Mass. 202, 207, 208. *Kennedy* v.

*Simmons,* 308 Mass. 431.  *Seder* v. *Kozlowski,* 311 Mass. 30, 39.  See also *Amory* v. *Assessors of Boston,* 309 Mass. 162.

When a final decree is entered, a preliminary injunction has served its purpose.  If the plaintiff is then deemed entitled to an injunction, the final decree can provide it.  The final decree becomes effective as soon as entered.  The final decree is vacated (*New York Central & Hudson River Railroad* v. *T. Stuart & Son Co.* 260 Mass. 242, 248, and other cases cited below), and proceedings under it are stayed (G. L. [Ter. Ed.] c. 214, § 19 [1]), only upon the conjunction of two things, (a) an appeal therefrom seasonably claimed by one having a right to appeal, for if claimed too late or by one without right the appeal will be dismissed, leaving the final decree in full force (*Campbell* v. *Howard,* 5 Mass. 376; *Rice* v. *Nickerson,* 4 Allen, 66; *Snow* v. *Dyer,* 178 Mass. 393, 396, 397; *Madden* v. *Madden,* 279 Mass. 417; *Dockray* v. *O'Leary,* 286 Mass. 589; *Barnes* v. *Barnes,* 291 Mass. 383, 388; *Weston* v. *Fuller,* 297 Mass. 545; *Graves* v. *Manzelli,* 299 Mass. 615; *Golden* v. *Crawshaw,* 302 Mass. 343; *Bolster* v. *Attorney General,* 306 Mass. 387); and (b) the entry of that appeal in this court.[2]  *Carilli* v. *Hersey,* 303 Mass. 82, 84.  *Nelson* v. *Bailey,* 303 Mass. 522, 526. *Dudley* v. *Sheehan Construction Co.* 305 Mass. 144, 146. See also *Faber* v. *Hovey,* 117 Mass. 107.  As soon as an appeal

---

[1] In other jurisdictions the general rule is that an injunction, other than a mandatory one, granted by a final decree, is not vacated by an appeal.  *Hovey* v. *McDonald,* 109 U. S. 150.  *Leonard* v. *Ozark Land Co.* 115 U. S. 465.  *Helbig* v. *Phillips,* 109 N. J. Eq. 546, 93 Am. L. R. 706, and note.

[2] An appeal cannot now be entered in the full court until completed by the preparation by the clerk of the record, papers and copies.  G. L. (Ter. Ed.) c. 214, § 19; c. 231, §§ 135, 144.  St. 1941, c. 187.  *Donnell* v. *Goss,* 267 Mass. 444, 447.  If the appellant fails to get the appeal ready for entry and to enter it within the time allowed by statute, his appeal may be dismissed, leaving the final decree in full force.  G. L. (Ter. Ed.) c. 231, § 133, as amended by St. 1933, c. 300, § 2; § 144.  *Lebow* v. *Sneierson,* 265 Mass. 116.  *McCarty* v. *Boyden,* 275 Mass. 91.  *Hubbard* v. *Southbridge National Bank,* 297 Mass. 17.  *Bass River Savings Bank* v. *Nickerson,* 302 Mass. 235.  *Home Owners' Loan Corp.* v. *Sweeney,* 309 Mass. 26.  *St. George* v. *Smith,* 309 Mass. 552. *Duart* v. *Simmons,* 236 Mass. 225.  *Donnelly* v. *Montague,* 305 Mass. 14, 19. Formerly the statute provided that an appeal from a final decree in equity should be entered at once upon the docket of the full court and that thereupon all proceedings under the decree should be stayed and the appeal should be pending before the full court.  Pub. Sts. (1882) c. 151, § 13; c. 150, § 16. *Cobb* v. *Rice,* 128 Mass. 11.  *Gray* v. *Gray,* 150 Mass. 56.  *Erlund* v. *Manning,* 160 Mass. 444.  *Burlingame* v. *Bartlett,* 161 Mass. 593.  *Carpenter* v. *Fleming,* 177 Mass. 525.  *Daly* v. *Foss,* 209 Mass. 470.  *Griffin* v. *Griffin,* 222 Mass. 218.  *Littlejohn* v. *Littlejohn,* 236 Mass. 326, 329.

has been claimed, and before the final decree is vacated by entry of the appeal in this court, a statutory power arises in the court that entered the decree and also in this court, to grant any needed injunction and to make any other proper interlocutory order, pending the appeal. [1]  G. L. (Ter. Ed.) c. 214, §§ 21, 22.  *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 221.  *Stathopoulos* v. *Reeksting,* 252 Mass. 542, 544.  *Coral Gables, Inc.* v. *Granara,* 285 Mass. 565, 570.  *Boston* v. *Santosuosso,* 308 Mass. 202, 210.  *Seder* v. *Kozlowski,* 311 Mass. 30, 40. These provisions make unnecessary, in the case of an appeal from a final decree, any automatic continuance in force after final decree of a preliminary injunction.

Numerous decisions in other jurisdictions support the rule that a preliminary injunction does not survive the entry of a final decree, whether relief is thereby granted or denied.  *Eureka Consolidated Mining Co.* v. *Richmond Mining Co.* 5 Sawyer, 121, Fed. Cas. No. 4,549.  *Sweeney* v. *Hanley,* 126 Fed. 97, 99.  *Raphael* v. *Monroe,* 60 Fed. (2d) 16, 20.  *Berthold-Jennings Lumber Co.* v. *St. Louis, Iron Mountain & Southern Railway,* 80 Fed. (2d) 32, 41.  *Montfort* v. *Korte,* 100 Fed. (2d) 615, 617.  *St. Louis, Iron Mountain & Southern Railway* v. *McKnight,* 244 U. S. 368, 374. *Arkadelphia Milling Co.* v. *St. Louis Southwestern Railway,* 249 U. S. 134, 145.  *Lambert* v. *Haskell,* 80 Cal. 611, 619, et seq.  *Kelly* v. *Kelly,* 89 Kans. 889.  *Commonwealth Public Service Co. of Montana* v. *Deer Lodge,* 96 Mont. 48, 70. *Canavan* v. *Canavan,* 18 N. M. 640.  *Gardner* v. *Gardner,* 87 N. Y. 14.  *Jackson* v. *Bunnell,* 113 N. Y. 216, 220.  *Jones* v. *Jones,* 75 Wash. 50.  *State* v. *Friedman,* 74 W. Va. 11. 2 Daniell's Ch. Pl. & Pr. (6th Am. Ed. 1894) 1679, et seq. Compare *Ford* v. *State,* 209 S. W. 490 (Tex. Civ. App.). That rule, we think, is in force in this Commonwealth.  The preliminary injunction had already expired when the appeal from the interlocutory decree granting it was entered in this court.  It would be a waste of time to consider whether

---

[1] For a comparable practice in Federal courts, see *Merrimack River Savings Bank* v. *Clay Center,* 219 U. S. 527;  Act of June 19, 1934, c. 651, §§ 1, 2 (48 U. S. Sts. at Large, 1064), U. S. C. Title 28, § 723c, Rule 62 (c).

or not it was properly granted. We have no occasion either to reverse or to affirm that interlocutory decree, for it has no effect upon present rights.

The interlocutory decree permitting the Attorney General to intervene is affirmed. The final decree is modified so that it will enjoin and restrain the respondents permanently only from furnishing, or advertising or undertaking to furnish, for a consideration, legal services, and will give costs to the petitioners. As so modified it is affirmed.

*Ordered accordingly.*